UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 17-07408 AB (AGRx) | Date: | November 1, 2018 |
|---|---|---|---|

| Title: | *Luke Delgadillo Garcia v. Miller Castings, Inc.* |
|---|---|

Present: The Honorable  **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**   [In Chambers] ORDER <u>**GRANTING**</u> MOTION TO ENTER CONSENT DECREE

Before the Court is Plaintiff Luke Delgadillo Garcia's ("Plaintiff") Motion to Enter Consent Decree (Dkt. No. 17). The United States intervened and filed an opposition, and Plaintiff filed a reply. For the following reasons, the Court **GRANTS** the Motion.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant operates two industrial metal casting facilities ("Facilities") in Whittier, California. Smith Decl. ¶ 2. Defendant obtained National Pollutant Discharge Elimination System ("NPDES") General Permits that required it to test stormwater discharges from the Facilities for a number of pollutants. Compl. ¶ 19. Plaintiff determined that Defendant failed to test for any pollutants from 2011-2013, and when Defendant did test in the 2014-2015 and 2015-2016 reporting periods, its stormwater discharges contained impermissibly high levels of Iron, Zinc, Aluminum, and TSS. *Id.* ¶¶ 77-78. Plaintiff contends that Defendant's discharge of polluted stormwater resulted from its failure to develop and implement an adequate Stormwater Pollution Prevention Plan ("SWPPP"), failure to implement best management practices ("BMPs") that achieve best available

technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT"), and failure to develop and implement adequate Monitoring and Reporting Plans ("M&RPs"). *See* Complaint generally. On August 19, 2016, Plaintiff served a Notice of Violation and Intent to File Suit (the "NOV") on Defendant and on the requisite federal and California state agencies. *See* Compl. ¶ 5, Ex. 1. The NOV asserted that Defendant violated its NPDES Permit and the Clean Water Act ("CWA") by (1) discharging storm water without best management practices in place to ensure concentrations of pollutants below the level commensurate with the application of "best available technology economically achievable" ("BAT") or "best conventional pollutant control technology" ("BDT") ; (2) discharging storm water in a manner that impairs receiving waters; (3) failing to develop and implement an adequate storm water pollution prevention plan; (4) failing to develop and implement an adequate monitoring; and (5) discharging storm water without authorization of a permit. NOV pp. 4–8.

On October 17, 2017, Plaintiff filed this action, alleging the same violations as those identified in the NOV. On January 9, 2018, Plaintiff field a Notice of Tentative Settlement indicating that the Consent Decree was subject to federal agency review. *See* Dkt. No. 9. On May 18, 2018, the United States filed a Notice of Concern asking that the Court require Plaintiff to file a motion to enter the Consent Decree. The Court granted that request and set a briefing schedule. The present Motion for Approval followed.

## II.   LEGAL STANDARD

Consent decrees are hybrids of private settlement agreements and public judgements. *Sierra Club, Inc. v. Electronic Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990). In light of this hybrid quality, "a district court should enter a proposed consent [decree] if the court decides that it is fair, reasonable and equitable and does not violate the law or public policy." *Id.* (citing *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125-26 (D.C. Cir. 1983). That is, "the focus of the court's attention in assessing the agreement should be the purposes which the statute is intended to serve, rather than the interests of each party to the settlement." *Citizens for a Better Environment*, 718 F.2d at 1125. Hence, "[a]s long as the consent decree comes 'within the general scope of the case made by the pleadings,' furthers 'the objectives upon which the law is based,' and does not 'violate the statute upon which the complaint was based,' the parties' agreement may be entered by the court." *Sierra Club*, 909 F.2d at 1355 (quoting *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 525-26 (1986)). Thus, a federal court may enter a consent decree that provides broader relief than the Court could have awarded after trial. *Id.*

However, "a consent decree that affects the public interest or third parties imposes a heightened responsibility on the court to protect those interests." *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). Consent decrees purporting to enforce the

Clean Water Act ("CWA") affect the public interest. To fulfill the public interest objectives of the CWA, a consent decree must actually further public environmental preservation. Courts should be skeptical of agreements which award plaintiffs and their counsel fees or other private gain but lack substantial injunctive relief or enforcement mechanisms. *See Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).

### III. DISCUSSION

The Consent Decree here merits approval.

First, the Consent Decree furthers the goals of the CWA and does not violate the law or public policy. The CWA was enacted "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" by reducing the discharge of pollutants into those waters. 33 U.S.C. § 1251(a); *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 52 (1987). To achieve this goal, the CWA generally prohibits discharge of pollutants from a point source to navigable waters unless authorized by permit. 33 U.S.C. § 1311(a); *see Arkansas v. Oklahoma*, 503 U.S. 91, 102 (1992). Permit-holders are subject to both state and federal enforcement, and absent "federal or state enforcement, private citizens may commence civil actions against any person 'alleged to be in violation of' the conditions of either a federal or state NPDES permit." *Gwaltney of Smithfield*, 484 U.S. at 53 (citing 33 U.S.C. §§ 1319, 1342(b)(7), 1365(a)(1)).

The Consent Decree here includes injunctive relief that furthers the goals of the CWA and environmental preservation. *See* Consent Decree (Smith Decl. Ex. 1) pp. 5-19. For example, the Consent Decree requires Defendant to implement numerous best management practices ("BMP") that are designed and intended to reduce the pollutants in the Defendant's stormwater discharges. The Consent Decree also adds another sampling location, and have included additional potential pollutants (nickel and lead) for future analysis. The Consent Decree also provides for Plaintiff's experts to monitor the facilities over the next three years to ensure compliance. Thus, the Consent Decree includes injunctive relief that will reduce the pollution loads in Defendant's stormwater runoff, which furthers the goals of the CWA.

The Government proffers a number of objections, but they lack merit. First, the Government contends that the Complaint does not allege enforceable permit requirements. But, this in itself is not a reason to reject the Consent Decree because "[a]s long as the consent decree comes 'within the general scope of the case made by the pleadings,' furthers 'the objectives upon which the law is based,' and does not 'violate the statute upon which the complaint was based,' the parties' agreement may be entered by the court." *Sierra Club*, 909 F.2d at 1355 (citation omitted). Certainly reducing stormwater pollution furthers the objectives of the CWA. The Government also argues

that the Consent Decree includes a confusing "Action Plan" provision and that the agreement should be revised. But the parties know what they negotiated and a potentially confusing term is not grounds for rejecting the Consent Decree or requiring the parties to re-draft it. Finally, the Government faults Plaintiff's counsel for having filed numerous CWA citizen enforcement actions, but the CWA itself authorizes such suits. The Court therefore overrules the Government's objections to the substantive terms of the Consent Decree.

The remainder of the Government's arguments challenge Plaintiff's counsel's fee award on the ground that Plaintiff's claims are weak, and their hours and rates are inflated. The Consent Decree provides for $40,000 in past fees and costs, and $5,000 for future fees and monitoring costs. Plaintiff estimates that the past and future costs will total $16,762,50, so the total attorneys' fees that counsel will recover will be $28.237.50. Plaintiff has already incurred a lodestar of $67,965.50, and anticipates another $25,000 in future fees, for a total of $92,965.50. Thus, the $28,237.50 agreed upon in the Consent Decree is only about 30% of the claimed lodestar.

In any event, because the Court is not deciding an attorneys' fees motion, the Court need not finally resolve disputes over hours, rates, and lodestar calculations and adjustments. *Cf. Staton*, 327 F.3d at 945 ("[T]o obtain fees justified on a common fund basis, the class's lawyers must ordinarily petition the court for an award of fees, separate from and subsequent to settlement."). Rather, the Court is determining whether the Consent Decree as a whole satisfies the standard set forth above. The Consent Decree provides significant environmental benefits, and the Court finds the $45,000 fee and cost award reasonable, in proportion to the relief achieved, and consistent with public policy.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Enter Consent Decree. Within 7 days of the issuance of this Order, Plaintiff shall email the Courtroom Deputy Clerk a Word file of the Consent Decree in final form for the Court's signature.

**IT IS SO ORDERED.**