JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUKE DELGADILLO GARCIA | Civil Case No.: 2:17-CV-07408-AB (AGRx) |
| Plaintiff, | |
| vs. | **[~~PROPOSED~~] CONSENT DECREE** |
| MILLER CASTINGS, INC.; | |
| Defendant, | **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Luke Delgadillo Garcia ("Plaintiff") and Miller Castings, Inc. ("Miller Castings"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Plaintiff is a citizen of the State of California.

**WHEREAS,** Plaintiff is concerned with the environmental health of the San Gabriel River Watershed, and uses and enjoy the waters of the San Gabriel River, its inflows, outflows and other waters of the San Gabriel Watershed;

**WHEREAS**, Miller Castings is the owner and operator of two nickel, cobalt steel and aluminum castings facilities located at 12251 Coast Drive and 2503 Pacific Park Drive in Whittier, California., Hereinafter, the facility located at 12251 Coast Drive shall be referred to herein as the "Coast Drive Facility" and the facility at 2503 Pacific Park Drive shall be referred to herein as the "Pacific Park Facility." The Coast Drive Facility and the Pacific Park Facility shall be collectively referred to herein by the Settling Parties as the "Facilities";

**WHEREAS,** Plaintiff's use and enjoyment of these waters are negatively affected by the pollution allegedly caused by the operations at the Facilities;

**WHEREAS,** Plaintiff acts in the interest of the general public to prevent pollution in these waterway, for the benefit of their ecosystems, and for the benefits of all individuals and communities who use these waterways for various recreational, educational, and spiritual purposes;

**WHEREAS,** the discharges from the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("1997 Storm Water Permit"), and as amended by Order No. 2014-0057-DWQ ("2015 Storm Water Permit") (collectively, the "Industrial General Permit" or the "IGP"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS**, on August 19, 2016 Plaintiff sent Miller Castings, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), and the Los Angeles Water Quality Control Board ("Regional Board") a notice of intent to file suit

("Notice Letter") under Sections 505(a) and (b) of the Clean Water Act, 33 U.S.C. §§ 1365(a) and (b). The Notice Letter alleged violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the 1997 Storm Water Permit and the 2015 Storm Water Permit at the Miller Castings Facilities[1];

**WHEREAS,** the parties engaged in extensive negotiations to reach an agreement in principle since the fall of 2016 and agreed that the statute of limitations would be tolled until November 17, 2017;

**WHEREAS**, on October 10, 2017 Plaintiff filed a complaint against Miller Castings in the United States District Court, Central District of California (Case No. 2:17-cv-07408), alleging violations of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the Storm Water Permit at the Miller Castings Facilities ("Complaint");

**WHEREAS**, Plaintiff alleges Miller Castings to be in violation of the substantive and procedural requirements of the 1997 Storm Water Permit, the 2015 Storm Water Permit, and the Clean Water Act with respect to the Miller Castings Facilities;

**WHEREAS**, Miller Castings denies all allegations in the Notice Letter and Complaint relating to the Miller Castings Facilities;

**WHEREAS**, Plaintiff and Miller Castings have agreed that it is in the Settling Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings; and

**WHEREAS**, all actions taken by Miller Castings pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

---

[1] For purposes of this Consent Decree, the NPDES permit and any amendments thereto in effect at the time of Miller Castings' required compliance with the terms of this Consent Decree shall be referred to as "the Industrial General Permit" or "IGP".

**2.** Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Miller Castings Facilities are located within this District;

**3.** The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

**4.** Plaintiff has standing to bring this action;

**5.** The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I. OBJECTIVES

It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in their Complaint. In light of these objectives and as set forth fully below, Miller Castings agrees to comply with the provisions of this Consent Decree and to comply with the requirements of the IGP and all applicable provisions of the Clean Water Act. Specifically, Miller Castings agrees to comply with Receiving Water Limitation VI.A. in the IGP which requires that Miller Castings "shall ensure that industrial storm water discharges and authorized Non-Storm Water Discharges ("NSWDs") do not cause or contribute to the exceedance of any applicable water quality standards in any affected receiving water," and Effluent Limitation V.A. of the 2015 Storm Water Permit. Miller Castings shall develop and implement BMPs necessary to achieve compliance with the IGP.

## II. AGENCY REVIEW AND TERM OF CONSENT DECREE

**A. Agency Approval.** Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Miller Castings if requested. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a

reasonable amount of time.

**B.** **Effective Date.** The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree.

**C.** **Termination Date.** This Consent Decree shall terminate two (2) years after the Effective Date ("Termination Date"), unless there is a prior ongoing, unresolved dispute regarding Miller Castings' compliance with this Consent Decree.

**D.** **Inspection of Facilities.** Plaintiff may conduct an inspection of the Miller Castings' Facilities up to forty-five (45) days prior to the Termination Date. The inspection shall be conducted according to the rules applicable to annual site inspections described below.

## III. POLLUTION CONTROL REQUIREMENTS

**A.** **Storm Water Pollution Reduction Measures**

   **1.** The storm water pollution control measures required by this Consent Decree shall be designed and operated to manage storm water discharges, through full compliance with the IGP.

   **2.** Commencing July 1, 2017 through the Termination Date of this Consent Decree, Miller Castings shall engage in the following activities to achieve compliance with the Permit and this Consent Decree:

   **(a)** If it has not done so by the Effective Date, Miller Castings will appoint a Qualified Industrial Storm Water Practitioner ("QISP") for each of the Facilities by January 1, 2018;

   **(b)** Level 1 ERA Evaluations – By January 1, 2018, Miller Castings shall, if it has not done so prior to the Effective Date:

   **(i)** Complete an evaluation, with the assistance of a QISP, of the industrial pollutant sources at the Facilities that are or may be related to the exceedance(s) of numeric effluent limits set forth in this Consent Decree; and

   **(ii)** Identify in the evaluation the corresponding BMPs in the SWPPP and any additional BMPs and Storm Water Pollution Prevention Plan ("SWPPP") revisions necessary to prevent future exceedances of numeric effluent limits set forth in this Consent Decree and to comply with the requirements of the Industrial General Permit ("IGP").

(iii) **Level 1 Action Plan and ERA Report.** Based upon the above evaluation, Miller Castings shall, as soon as practicable, but no later than January 1, 2018:

    **a)** Revise the SWPPP as necessary and implement any additional BMPs identified in the evaluation;

    **b)** Certify and submit to Plaintiff, the Court and the Los Angeles Regional Water Quality Control Board ("RWQCB") via SMARTS a Level 1 Action Plan/ERA Report prepared by a QISP that includes the following:

        **1)** A summary of the Level 1 ERA Evaluation required in by this provision;

        **2)** A detailed description of the SWPPP revisions and any additional BMPs for each parameter that exceeded a numeric limit set forth in this Consent Decree; and

    **c)** Certify and submit to Plaintiff, the Court and the RWQCB via SMARTS the QISP's identification number, name, and contact information (telephone number, e-mail address).

**3.**    In addition to the activities described in Sections III.A.2(a) and (b) above, Miller Castings agrees to, comply, at its sole discretion, with any one of the following three (3) options set forth in Paragraphs 4-6 below.

**4.**    **OPTION 1:** By March 1, 2018, as to either the Coast Drive Facility or the Pacific Park Facility or as to both Facilities, at Miller Castings' option, it will file a NEC and provide a copy of the NEC Permit Registration Documents (PRDs) to Plaintiff. Miller Castings further agrees to notify Plaintiff pursuant to Section VIII.E. when it receives notification from the Los Angeles Regional Water Quality Control Board ("State Board") either approving or disapproving the NEC conditional exclusion for the Coast Drive Facility or the Pacific Park Facility or both Facilities as the case may be, or;

**5.**    **OPTION 2:** In the event that Miller Castings: does not file for and obtain NEC, as set forth in Section III.A.3(a) above, for either or both Facilities, then, as through the Termination Date, as to the facility for which a NEC was not filed and/or approved, and by January 1, 2019, Miller Castings will complete modifications to direct industrial stormwater discharge flows from

those areas uniquely identified including industrial activities potentially impacting stormwater discharges (does not include employee parking areas, roof outfalls, and other non-industrial sources) to a stormwater collection and infiltration system designed to comply with design storm standards established in Section H.6. of the IGP, except as provided in an Industrial Activity BMP Demonstration (Section XII.D.2.a). A Factor of Safety shall be incorporated into the design of all treatment control BMPs to ensure that storm water is sufficiently treated throughout the life of the treatment control BMPs. The design storm standards for treatment control BMPs are as follows:

(a) Volume-based BMPs: The Discharger, at a minimum, shall calculate the volume to be treated using one of the following methods:

(i) The volume of runoff produced from an 85th percentile 24-hour storm event, as determined from local, historical rainfall records;

(ii) The volume of runoff produced by the 85th percentile 24-hour storm event, determined as the maximized capture runoff volume for the facility, from the formula recommended in the Water Environment Federation's Manual of Practice;14 or,

(iii) The volume of annual runoff required to achieve 80% or more treatment, determined in accordance with the methodology set forth in the latest edition of California Stormwater Best Management Practices Handbook, using local, historical rainfall records.

(b) Flow-based BMPs: The Discharger shall calculate the flow needed to be treated using one of the following methods:

(i). The maximum flow rate of runoff produced from a rainfall intensity of at least 0.2 inches per hour for each hour of a storm event;

(ii) The maximum flow rate of runoff produced by the 85th percentile hourly rainfall intensity, as determined from local historical rainfall records, multiplied by a factor of two; or,

(iii) The maximum flow rate of runoff, as determined using local historical rainfall records, that achieves approximately the same reduction in total pollutant loads as would be achieved by treatment of the 85th percentile hourly rainfall intensity multiplied by a factor of two.

6.  **OPTION 3:** In the event that Miller Castings: does not elect either OPTION 1 or OPTION 2 as set forth in Sections III.A.4 and III. A.5 above, or does not file for and obtain NEC for either or both Facilities, then, as to the facility for which a NEC was not filed and/or approved, then, through either through the Termination Date, or until the modifications set forth in OPTION 2 are completed, whichever is earlier, Miller Castings will continue to comply with the IGP, and will assure the incorporation of the following BMPs, as more fully described in Miller Castings' SWPPP, which shall be implemented at the Miller Castings Facilities, the boundaries of which are outlined on the Miller Castings Facilities Site Maps ("Site Maps"), attached as Exhibit "A" hereto. The Parties agree that the SWPPP may be modified from time to time as more fully described in this Consent Decree. In the event of a modification to the SWPPP or Facilities Site Map, Miller Castings will provide a copy of the revised exhibits on Plaintiff, the Court in the manner described herein, and the RWQCB via SMARTs.

**(a)    Non-Structural BMPs**

 **(i)    Good Housekeeping**

  **a)**  Observe and maintain industrial activity outdoor areas;

  **b)**  Minimize or prevent material tracking offsite;

  **c)**  Minimize dust generated by industrial activities;

  **d)**  Cleanup areas affected by rinse and wash water;

  **e)**  To the extent practical, cover stored industrial materials that can be readily mobilized by contact with storm water;

  **f)**  Contain stored non-solid industrial materials or wastes;

  **g)**  Prevent improper disposal of rinse/wash waters; and

  **h)**  Minimize flows of offsite storm water and NSWDs into material handling areas.

 **(ii)    Preventative Maintenance**

  **a)**  Identify industrial equipment and systems that may leak;

  **b)**  Observe the equipment and systems to detect leaks;

  **c)**  Establish a schedule for maintenance; and

d) Establish procedures for maintenance and repair.

(iii) **Spill Prevention and Response Procedures**

    a) Establish procedures and/or controls to minimize spills and leaks;

    b) Develop and implement spill and leak response procedures to prevent industrial materials from being discharged;

    c) Clean up spills and leaks promptly;

    d) Identify and describe needed spill and leak response equipment; and

    e) Train Storm Water Team in appropriate spill response.

(iv) **Material Handling and Waste Management**

    a) Prevent or minimize handling of industrial materials or wastes that can be readily mobilized;

    b) Contain all stored non-solid industrial materials or wastes that can be transported or dispersed by the wind or rain;

    c) Cover industrial waste disposal containers and industrial material storage containers that contain industrial materials when not in use;

    d) Divert run-on and storm water generated from the Facilities within the Facilities away from all stockpiled materials;

    e) Clean all spills of industrial materials or wastes; and

    f) Observe and clean as appropriate any outdoor material or waste that could cause contamination to storm water if contact is made.

(v) **Erosion and Sediment Controls**

    a) Implement effective wind erosion controls;

    b) Provide effective stabilization for inactive areas, finished slopes, and other areas prior to a forecasted storm event based on the closest National Oceanic and Atmospheric Administration ("NOAA") whether station.;

    c) Maintain effective perimeter controls and stabilize site entrances;

    d) Divert run-on and storm water generated from within the Facilities away from erodible materials; and

**e)** Properly design and maintain sediment basins.

**(vi)** **Employee Training.** Miller Castings' QISP(s) will provide sufficient training to the appropriate team members assigned to perform activities required by this Consent Decree ("Storm Water Team") including:

    **a)** Preparing or acquiring necessary and appropriate training manuals;

    **b)** Providing a training schedule; and

    **c)** Maintaining training documentation.

**(vii)** **Quality Assurance and Record Keeping**

    **a)** Develop and implement management procedures to ensure implementation of plans;

    **b)** Develop a method of tracking and recording program implementation; and

    **c)** Maintain implementation records (i.e., BMP deployment records, employee training logs, spill occurrence and clean-up records).

**(b)** **Advanced BMPs.** Advanced BMPs will be implemented to the extent appropriate and feasible, in conjunction with industry standards and applicable to the Facilities industrial activities in order to prevent and reduce storm water contact with industrial

**(c)** **Non-Storm Water Discharges (NSWDs)**

**(i)** Reduce or prevent the contact of authorized NSWDs with materials or equipment that are potential sources of pollutants;

**(ii)** Reduce, to the extent practicable, the flow or volume of authorized NSWDs;

**(iii)** Ensure that authorized NSWDs do not contain quantities of pollutants that cause or contribute to an exceedance of water quality standards ("WQS") as set forth in the RWQCB Basin Plan; and

**(iv)** Reduce or prevent discharges of pollutants in authorized NSWDs in a manner that reflects best industry practice considering technological availability and economic practicability and achievability.

**(d)** **Waste, Garbage, and Floatable Debris**

**(i)** Dispose of grass clippings, leaves, sticks, or other collected vegetation as garbage,

or by composting. Do not dispose of collected vegetation into waterways or storm

drainage systems; and

**(ii)** Waste receptacles exposed to storm water shall be tightly closed or otherwise

covered when not in use.

**B.** **Numeric Action Level ("NAL") for Discharges from the Miller Castings Facilities.**

Exceedances of the values presented in Table 1 indicate to the discharger that additional BMPs may be

needed in order to comply with BAT/BCT.

### Table 1: Numeric Action Levels for Discharges

| Pollutant | Test Method | Units | Annual NAL | Instantaneous Maximum NAL |
|---|---|---|---|---|
| pH | Per IGP Section XI.C.2 | pH units | N/A | Less than 6.0, Greater than 9.0 |
| Total Suspended Solids | SM-2540-D | mg/L | 100 | 400 |
| Oil and Grease | EPA-1664A | mg/L | 15 | 25 |
| Total Recoverable Aluminum | EPA-200.8 | mg/L | 0.750 | N/A |
| Copper, Total | EPA-200.8 | mg/L | 0.0332[2] | N/A |
| Total Recoverable Iron | EPA-200.8 | mg/L | 1.0 mg/L | N/A |
| Total Recoverable Zinc | EPA-200.8 | mg/L | 0.26 [3] | N/A |

**C.** **Level 2 Status**

**1.** **Level 2 Action Plan.** Miller Castings shall compare the analytical results of the storm

water samples collected at the Miller Castings Miller Castings Facilities for those Qualifying

Storm Events ("QSEs") Miller Castings is required to sample pursuant to the terms of this Consent

Decree to the corresponding instantaneous maximum NAL exceedance[4] or annual NAL

---

[2] Or as adjusted based on California Toxic Rule hardness provisions.

[3] Or as adjusted based on California Toxic Rule hardness provisions.

[4] An Instantaneous Maximum NAL Exceedance occurs when two or more analytical results from samples taken for any single parameter within a reporting year exceed the instantaneous maximum NAL value as illustrated in Table 1.

exceedance[5] as specified in Table 1. If it is determined that a NAL exceedance has occurred for the same parameter while Miller Castings is in Level 1, any time after October 1, 2018, Miller Castings shall certify and submit a Level 2 Action Plant that identifies industrial activity BMP demonstrations the Facilities has selected to perform to Plaintiff, the Court, and the RWQCB via SMARTS by January 1 following the reporting year during which the exceedance occurred or thirty (30) days from Miller Castings' receipt of sampling data showing the exceedance, whichever is greater.

**2.** **Level 2 Action Plan Requirements.** Each Level 2 Action Plan submitted shall be prepared by a QISP and include one or more of the following demonstrations:

**(a)** The identification of the contaminant(s) discharged in excess of the numeric value(s) in Table 1;

**(b)** An assessment of all pollutant sources of each contaminant discharged in excess of the numeric value(s) in Table 1 and the extent to which those contaminants are associated with industrial activities at the Facilities; and

**(c)** For contaminants associated with industrial activities, the identification of additional BMPs that shall be implemented to achieve compliance with the Table 1 Limit(s), as well as the design plans and calculations of these additional BMPs, or, in the alternative, an evaluation of any additional BMPs that would reduce or prevent an exceedance, estimated costs of the additional BMPs evaluated, an analysis demonstrating that the additional BMPs needed to prevent the exceedance are not BAT/BCT and are not required to ensure discharges do not cause or contribute to violations of water quality standards, and an analysis describing the basis for the selection of BMPs implemented in lieu of the additional BMPs evaluated but not implemented.

**(d)** **Implementation Schedule**

**(i)** The time schedules for implementation shall ensure that all BMPs are implemented as soon as possible but in no case later than January 1 following the reporting year

---

[5] An Annual NAL Exceedance occurs when the average concentration for each parameter using the results of all the samples taken for the entire Facilities over the reporting year.

during which the exceedance occurred or thirty (30) days from Miller Castings's receipt of sampling data showing the exceedance, whichever is greater.

    **(ii)**    Miller Castings shall be entitled to a single time extension of up to six (6) months upon submitting the following information to SMARTS and the Plaintiff:

        **a)**  Reason for the time extension;

        **b)**  A revised Level 2 Action Plan describing the necessary tasks that will need to be taken in order to complete the technical report justifying the extension; and

        **c)**  A description of the BMPs that will be implemented in the interim while permanent BMPs are being implemented.

**3.**    Miller Castings shall diligently file and pursue all required local agency applications for permits and/or approvals for the BMPs included in any Level 2 Action Plan. Miller Castings shall further diligently pursue the procurement of contractors, labor, and materials to complete all such BMPs by the deadline for implementing the Level 2 Action Plan described in this section, and shall use commercially reasonable efforts to meet these deadlines.

**D.**    **Sampling and Analysis**

**1.**    Miller Castings shall install a recording rain gauge capable of recording rainfall to 0.1 inches at the Miller Castings Facilities within thirty (30) days of the Effective Date. Miller Castings shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Plaintiff with Miller Castings' Monitoring Report described in F below for the term of this Consent Decree. In the event there is a dispute about the quantity of rainfall at the Facilities, the rain gauge installed pursuant to this section shall be deemed to be the actual rainfall at the site.

**2.**    By January 1, 2018, Miller Castings shall develop a plan for monitoring all storm water and NSWDs from the Miller Castings Facilities that meets the requirements of this Consent Decree and Section XI of the Permit, and incorporate same into its SWPPP.

**3.**    During the life of this Consent Decree, Miller Castings shall collect samples of any Qualifying Storm Event ("QSE") from at least two QSEs within the first half of each reporting year (July 1 – December 31) and at least two QSEs within the second half of each reporting year

(January 1 – June 30) from each sampling point at the Miller Castings Facilities in conformity with its Storm Water Monitoring Implementation Plan ("Monitoring Plan") and in compliance with the IGP. Should Miller Castings demonstrate full compliance with all of the NALs in Table 1 for four (4) consecutive QSEs, Miller Castings may reduce sampling in compliance with XI.C.7 of the 2015 Storm Water Permit, except under no circumstances shall Miller Castings be permitted to collect samples from less than two (2) QSEs per reporting year unless two QSEs do not occur in a particular reporting year.

**4.** Miller Castings shall comply with the analytical methods as required by Section XI.B of the 2015 Storm Water Permit as more fully described in the Monitoring Plan.

**5.** Miller Castings shall request that results of all sample analyses required by this Consent Decree be reported to it within fifteen (15) days of laboratory receipt of the sample.

**6.** Miller Castings shall provide the complete laboratory results of all samples collected as required by this Consent Decree to Plaintiff concurrently with the posting of same on SMARTS or no later than thirty (30) days from receipt of the sample results from the laboratory, whichever is sooner.

**E.** **Visual Observations**. During the life of this Consent Decree, Miller Castings shall conduct and document visual observations pursuant to Section XI.A of the 2015 Storm Water Permit and as more fully described in the Miller Castings SWPPP.

**F.** **Annual Comprehensive Facilities Compliance Evaluation**

**1.** Miller Castings shall submit an Annual Comprehensive Facilities Compliance Evaluation ("Annual Evaluation") to Plaintiff no later than June 15, of each year that contains the following information:

**(a)** A review of all sampling, visual observations, and inspection records conducted during the previous reporting year;

**(b)** An inspection of all areas of industrial activity and associated potential pollutant sources for evidence of, or the potential for, pollutants entering the storm water conveyance system;

**(c)** An inspection of all drainage areas previously identified as having no exposure to industrial activities and materials in accordance with the definitions in Section XVII of the 2015

Storm Water Permit;

**(d)** An inspection of equipment needed to implement the BMPs identified in the SWPPP;

**(e)** An inspection of any structural BMPs identified in the SWPPP;

**(f)** A review and effectiveness assessment of all BMPs identified in the SWPPP for each area of industrial activity and associated potential pollutant sources to determine if the BMPs are properly designed, implemented, and are effective in reducing and preventing pollutants in industrial storm water discharges and authorized NSWDs;

**(g)** A Compliance Checklist that indicates whether Miller Castings complies with and has addressed all applicable requirements of the Permit;

**(h)** An explanation for any non-compliance of requirements within the reporting year, as indicated in the Compliance Checklist;

**(i)** An identification, including page numbers and/or sections, of all revisions made to the SWPPP within the reporting year;

**(j)** The date(s) of the Annual Evaluation; and

**(k)** An appendix including the following information:

> **(i)** All rain gauge data for the Wet Season; and
>
> **(ii)** Records of storm water samples collected at the Miller Castings Facilities for QSEs Miller Castings is required to sample pursuant to the terms of this Consent Decree.

**2.** By January 1, 2018, or forty-five (45) days after the Effective Date, whichever is later, Miller Castings shall revise its Monitoring Plan for the Miller Castings Facilities to incorporate all sampling, analysis, observation, and reporting requirements of this Consent Decree and the Permit.

**3.** Miller Castings shall submit the revisions to its Monitoring Plan for the Miller Castings Facilities to Plaintiff for review and comment. Plaintiff shall provide comments, if any, to Miller Castings within thirty (30) days of receipt of the Monitoring Plan. Miller Castings shall incorporate Plaintiff' comments into the Monitoring Plan, or shall justify in a writing prepared by a QISP why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes over the adequacy of the revised Monitoring Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**G. Storm Water Pollution Prevention Plan Revisions**

    **1.** By January 1, 2018, or forty-five (45) days after the Effective Date, whichever is later, Miller Castings shall revise the SWPPP(s) for the Miller Castings Facilities to include all BMPs required by the Consent Decree and comply with all provisions of the Permit.

    **2.** Miller Castings shall submit the revised SWPPP(s) to Plaintiff for review and comment. Plaintiff shall provide comments, if any, to Miller Castings within sixty (60) days of receipt of the SWPPP(s). Miller Castings shall incorporate Plaintiff' comments into the SWPPP(s), or shall justify in a writing prepared by a QISP why any comment is not incorporated within fifteen (15) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

    **3.** Miller Castings shall engage a QISP to revise the SWPPP(s) for the Miller Castings Facilities if there are any changes in the Miller Castings Facilities' operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to the IGP.

    **4.** Throughout the term of this Consent Decree, Miller Castings shall submit any SWPPP(s) revisions made pursuant to the requirements of this paragraph to Plaintiff for review and comment within ten (10) days of the SWPPP revision. Plaintiff will provide comments, if any, to Miller Castings within thirty (30) days of receipt of such revised SWPPP. Miller Castings shall incorporate Plaintiff's comments into any revised SWPPP, or shall justify in a writing prepared by a QISP as to why any comment is not incorporated within thirty (30) days of receiving comments. Any disputes as to the adequacy of the revised SWPPP(s) shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**H. Employee Training**

    **1.** In addition to Section III.A.(3)(a)(vi) above, within ninety (90) days of the Effective Date of this Consent Decree, Miller Castings shall develop and implement a training program, in compliance with Section X.H.1.f., X.H.1.g., and IX of the 2015 Storm Water Permit ("Training Program"). At a minimum, the Training Program shall include at least the following:

(a) **Language.** Miller Castings shall conduct the Training Program in English. If there are any Team Members who do not understand English, then Miller Castings shall conduct the Training Program also in the language or languages in which those identified employees participating in the Training Program understand.

(b) **Non-Storm Water Discharges.** Miller Castings shall train all Team Members on the 2015 Storm Water Permit's prohibition of NSWDs, so that employees know what NSWDs are, that NSWDs can result from improper surface washing or dust control methods, and how to detect and prevent NSWDs to ensure compliance with this Consent Decree and the 2015 Storm Water Permit.

(c) **BMPs.** Miller Castings shall train all Team Members on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Miller Castings Facilities.

(d) **Storm Water Sampling.** Miller Castings shall designate an adequate number of Team Members to collect storm water samples from each discharge location as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

(e) **Visual Observation Training.** Miller Castings shall provide training to all Team Members at the Miller Castings Facilities regarding visual observations pursuant to this Consent Decree and the Permit.

2. Training shall be provided by a QISP who is familiar with the requirements of this Consent Decree and the IGP. The training shall be repeated annually or as necessary to ensure that all such Team Members are familiar with the requirements of this Consent Decree, the IGP, and the Miller Castings Facilities' SWPPP(s) or Monitoring Plan(s).

3. Miller Castings shall maintain training records to document compliance with this Section, and shall provide Plaintiff with a copy of these records in its annual monitoring and reporting document described above.

## IV. **MONITORING AND REPORTING**

**A.** **Site Inspections.**

**1.** Every year during the life of this Consent Decree, up to three (3) of Plaintiff representatives may participate in the Miller Castings Facilities Annual Evaluation site inspections as more fully described in section XV of the 2015 Storm Water Permit (the "Site Inspection") The site inspections shall occur during normal business hours. Miller Castings shall provide Plaintiff and Plaintiff's counsel of record with at least seven business' day notice prior to the Site Inspection. Notice shall be provided by electronic mail to Plaintiff's counsel of record. Plaintiff shall respond by electronic mail and state the names of all persons that Plaintiff will bring to the Site Inspection.

**2.** Plaintiff shall provide Miller Castings with any comments regarding the Site Inspection within seventy-two (72) hours of the completion thereof. Said comments shall be prepared, signed and certified by Plaintiff's designated QISP. Miller Castings shall respond to Plaintiff's comment within thirty (30) days from which they are received, however, Miller Castings is not obligated to respond to any comments regarding the Site Inspection received after seventy-two hours has passed.

**B.** **Compliance Monitoring and Oversight.** Miller Castings shall make a onetime payment of Five Thousand Dollars ($5,000.00) to compensate Plaintiff for costs and fees to be incurred for monitoring Miller Castings' compliance with this Consent Decree. Payment shall be made within five (5) business days of the Effective Date payable to "Brodsky & Smith, LLC" via U.S. Mail.

**C.** **Action Plan Payment.** With the exception of the Level 1 ERA Action Plan submittal discussed in Section III.A, *supra*, Miller Castings shall pay Five Thousand Dollars ($5,000.00) each time an Action Plan is submitted to the United States Treasury care of Alicia Kolaian, Budget Analyst, Environment & Natural Resources Division, Executive Office, P.O. Box 7611, Ben Franklin Station, Washington, D.C. 20044-7611. Payments shall be submitted simultaneously with the submittal of the Action Plan.

**D.** **Miller Castings Document Provision.** During the life of this Consent Decree, Miller Castings shall copy Plaintiff on all documents related to storm water quality at the Miller Castings Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county, or

municipality. Such reports and documents shall be provided to Plaintiff on the date they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Miller Castings' compliance with the Permit or storm water quality received by Miller Castings from any regulatory agency, state or local agency, county, or municipality shall be provided to Plaintiff within ten (10) days of receipt by Miller Castings. Provided, however, that this Consent Decree shall not require disclosure of any information or documents subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

## V. ENVIRONMENTAL PROJECT & REIMBURSEMENT OF LITIGATION FEES & COSTS

**A.** **Environmental Project.** To remediate the alleged environmental harms resulting from non-compliance with the 1997 Storm Water Permit and 2015 Storm Water Permit alleged in the Complaint, Miller Castings agrees to make a payment of Five Thousand Dollars ($5,000.00) to University of California San Diego Extension Services to fund tuition grants for owners and employees of small businesses[6] affected by the stormwater permit. The payments shall be made within five (5) business days of the Effective Date payable to "Regents of the University of California, UCSD" and mailed to UC San Diego Extension, attention Laura Fandino, 8950 Villa La Jolla Drive, Suite A204, La Jolla, CA 92037-1712.

**B.** **Reimbursement of Attorneys' Fees and Costs.** Miller Castings shall pay a total of Forty Thousand Dollars ($40,000.00) to "Brodsky & Smith, LLC" for their investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred as a result of investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made payable to "Brodsky & Smith, LLC" within five (5) business days of the Effective Date via U.S. Mail.

## VI. DISPUTE RESOLUTION AND RETENTION OF JURISDICTION

**A.** **Continuing Jurisdiction.** This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for

---

[6] Small Businesses as used herein shall mean businesses that employs no more than fifty (50) people per calendar year.

the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**B.**     **Meet and Confer.** A Party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.**     **Dispute Resolution.** If the Parties cannot resolve a dispute by the end of meet and confer informal negotiations, then the parties shall attempt to settle the dispute through mediation provided by the American Arbitration Association ("AAA") pursuant to AAA's Commercial Mediation Provisions in effect at the time the act or acts being disputed occurred.

**D.**     **Burden of Proof.** In any dispute resolution proceeding, the Party invoking the dispute resolution procedures provided herein shall have the burden of demonstrating that the other Party has failed to meet its obligations as set forth herein.

**E.**     **Enforcement Fees and Costs.** If formal dispute resolution is undertaken, then litigation costs and fees incurred in conducting such shall be awarded to the prevailing party.

**VII.**    <u>**MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**</u>

**A.**     **Plaintiff's Public Release of Claims.** This Consent Judgment is a final and binding resolution between Plaintiff, on his own behalf, and on behalf of the public and in the public interest, and Miller Castings, and their parents, subsidiaries, affiliated entities under common ownership, directors, officers, agents, employees, attorneys, if any (collectively "Releasees"), and shall have a preclusive effect such that no other person or entity, whether purporting to act in his, her, or its interests or the public interest shall be permitted to pursue and/or take any action with respect to any violation of the CWA that was alleged in the Complaint, or that could have been brought pursuant to the Notice.

**B.**     **Plaintiff's Release of Additional Claims.** As to Plaintiff for and in his individual capacity only, this Consent Judgment shall have preclusive effect such that he shall not be permitted to pursue and/or take any action with respect to any other statutory or common law claim, to the fullest extent that any of the foregoing were or could have been asserted by him against Miller Castings or the Releasees based on

the facts alleged in the Complaint and the Notice, whether or not based on actions committed by Miller Castings.

**C.    Waiver of Rights Under Section 1542 of the California Civil Code**

    **1.**    Plaintiff acting in his individual capacity waives all rights to institute any form of legal action, and releases all claims against Miller Castings, and the Releasees, (referred to collectively in this Section as the "Claims"). In furtherance of the foregoing, Plaintiff waives any and all rights and benefits which he now has, or in the future may have, conferred upon him with respect to the Claims by virtue of the provisions of § 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

    **2.**    Plaintiff understands and acknowledge that the significance and consequence of this waiver of California Civil Code § 1542 is that even if Plaintiff suffers future damages arising out of or resulting from, or related directly or indirectly to, in whole or in part, the facts in the Complaint, Plaintiff will not be able to make any claim for those damages against Releasees.

**D.    Miller Castings' Release of Plaintiff.** Miller Castings, on behalf of itself, its past and current agents, representatives, attorneys, successors and/or assignees, hereby waives any and all claims against Plaintiff, his attorney, and other representatives for any and all actions taken or statements made (or those that could have been taken or made) by Plaintiff and his attorney and other representatives, whether in the course of investigating Claims or Otherwise.

**E.    Parties' Release.** Unless specifically provided for in this Consent Decree, the Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents,  and other representatives release all persons including, without limitation, all other Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys,

consultants, and other representatives) from any additional attorney's fees or expenses related to the resolution of this matter.

**F.** Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to Miller Castings' compliance with the 2015 Storm Water Permit or the Clean Water Act occurring or arising after the effective date of this Consent Decree.

## VIII.   MISCELLANEOUS PROVISIONS

**A.     No Admission of Liability.** Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Miller Castings maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

**B.     Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the 2015 Storm Water Permit, the Clean Water Act, or specifically herein.

**C.     Choice of Law and Venue.** The laws of the United States shall govern this Consent Decree, with venue proper only in the Central District of California.

**D.     Severability.** In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**E.     Correspondence and Notices.** Any and all notices and/or correspondence between the Parties provided for or permitted under this Consent Decree shall be in writing and personally delivered or sent by:

**1.**     First-class (registered or certified) mail return receipt requested; or

**2.**     Overnight or two-day courier; or

**3.**     By email with confirmed receipt only (thus at the risk of the email sender); on any Party by the other Party to the following addresses:

If to Plaintiff:

Evan J. Smith, Esquire

Brodsky & Smith, LLC

Two Bala Plaza, Suite #510

Bala Cynwyd, PA 19004

T:     877.354.2590

F:     310.247.0160

Email:  esmith@brodsky-smith.com


If to Miller Castings:

Kimberly D. Lewis, Esquire

Ervin Cohen & Jessup, LLP

9401 Wilshire Blvd., 9th Floor

Beverly Hills, CA 90212-2974

T:     310.281.6332

F:     310.859.2325

Email:  klewis@ecjlaw.com

Any change of address or addresses shall be communicated in the manner described above for giving notices.

**F.      Counterparts.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**G.      Modification of the Consent Decree.** This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties, or upon motion of any Party as provided by law and upon an entry of a modified Consent Judgment by the Court. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**H.      Full Settlement.** This Consent Decree contains the sole and entire agreement and understand of the Parties with respect to the entire subject matter hereof, and any and all discussions, negotiations, commitments and understandings related thereto. No representations, oral or otherwise, express or implied, other than those contained herein have been made by any party hereto. No other agreements not specifically referred to herein, oral or otherwise, shall be deemed to exist or to bind any of the Parties.

**I.      Integration Clause.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the Consent Decree between the Settling Parties and expressly supersedes any and all prior oral or written Consent Decrees, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**J.      Authority of Counsel.** The undersigned representatives for Plaintiff and Miller Castings each certify that he/she is fully authorized by the party whom he/she represents to approve this Consent Decree as to form.

**K.      Authority.** Miller Castings certifies that its undersigned representative is fully authorized to enter into this Consent Decree, to execute it on behalf of Miller Castings, and to legally bind Miller Castings to its terms.

**L.      Agreement to be Bound.** The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

## IX.      <u>COURT APPROVAL</u>

The Parties hereby respectfully request that the Court promptly approve and enter this Consent Decree. Upon entry of this Consent Decree, Plaintiff and Defendant waive their respective rights to a hearing or trial on the allegations of the Complaint and Notice which are at issue in this action. If this Consent Decree is not approved by the Court, it shall be of no force and effect, and it may not be used in any proceeding for any purpose.

~~**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.~~

**IT IS SO ORDERED.**

Date:   November 13, 2018

The Honorable Andre Birotte Jr.

United States District Court Judge

Central District of California